### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| QUICKEN LOANS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-1565-TWP-DKL |
| | ) | |
| SHARON DOWNING, an individual, and | ) | |
| MICHAEL S. BINDER, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Quicken Loans, Inc.'s ("Quicken") Motions for Summary Judgment as to Liability of Defendants' Sharon Downing ("Ms. Downing") and Michael S. Binder ("Mr. Binder"). Quicken filed suit in this Court seeking damages from Ms. Downing and Mr. Binder stemming from Ms. Downing's criminal scheme to defraud Quicken. Specifically, Quicken alleges that it is entitled to treble damages from Ms. Downing[1] after she took out a home equity line of credit for $83,600.00 while impersonating her sister, Patricia Ms. Wilcher ("Ms. Wilcher").  In addition, Quicken also alleges it is entitled to damages from Mr. Binder, as the individual closing agent, when he negligently verified Ms. Downing's identity as the borrower and allowed the transaction to close.  Quicken further alleges Mr. Binder breached the contract between him and JMT Document Services ("JMT") when he failed to verify Ms. Downing's identity and notarized Ms. Downing's forged signatures.  Mr. Binder argues that Quicken is not entitled to summary judgment because the issues presented by Quicken are reserved for determination by the trier of fact.  For the reasons set forth below, Quicken's Motion for Summary Judgment as to the Liability of Defendant Sharon Ms. Downing (Dkt. 55) is

---

[1] Ms. Downing is representing herself *pro se*.

**GRANTED** and Plaintiff's Motion for Summary Judgment as to the Liability of Defendant Michael S. Mr. Binder (Dkt. 56) is **GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND

**A.      Ms. Downing Applies for a Loan by Impersonating Patricia J. Wilcher**

The following facts are undisputed and are presented in the light most favorable to the non-moving parties.  In March 2007, Ms. Downing applied for a home equity line of credit for $83,600.00 with Quicken while impersonating her older sister, Patricia J. Wilcher ("Ms. Wilcher").  In an effort to obtain the loan, Ms. Downing utilized identifying information from Ms. Wilcher, including her name, social security number, date of birth, and mailing address.[2] Ms. Downing communicated with Quicken using the email address patriciawilcher@yahoo.com and faxed them financial information belonging to Ms. Wilcher in order to begin the loan application process.  Ms. Downing also had telephone conversations with personnel from Quicken posing as Ms. Wilcher.  Ms. Wilcher herself did not make any loan application with Quicken or send Quicken any of her identifying information in an effort to obtain a loan.  Ms. Wilcher testified that her sister, Ms. Downing, had access to her home, her identifying information as well as her financial information.  Subsequently, Quicken processed and approved the loan and began to prepare for the closing.

---

[2] Quicken sent a request for admissions to Ms. Downing on August 22, 2011 pursuant to Federal Rule of Civil Procedure 36(a) along with a letter citing Rule 36(a)(4) which stated that "the matters asserted in each of the numbered Requests will be deemed admitted by you for purposes of this proceeding only, unless, within 30 days, you serve a written answer or objection addressed to each of the requests."  *See* Dkt. 55-34 at 2.  Ms. Downing did not respond to Quicken's request for admissions, even after Quicken sent another letter informing her of the missed deadline.  Dkt. 55-35.  "[T]he Rule is self-executing, meaning that no court intervention is required for an admission to be established…unanswered requests for admissions are automatically deemed admitted with the passage of the deadline to respond."  *Lawson v. Diehl Machines, Inc.*, No. 3:98-CV-194, 1999 WL 325064, at *3 (N.D. Ill. Apr. 16, 1999).  Accordingly, many of the facts attributed to Ms. Downing in this section have been deemed admitted by her pursuant to her failing to response to Quicken's request for admissions.

**B.      The Closing of the Loan**

On March 17, 2007, the closing of the loan was scheduled to take place at a UPS store. Quicken hired Title Source, Inc. ("Title Source") as the title agent.   Title Source did not have closing agents on staff; therefore they hired JMT Document Services ("JMT") to retain a local notary who would also act as a witness closer.   JMT retained Mr. Binder to be the notary and individual closing agent for the closing of the loan.   Mr. Binder was an individual closing agent who started T.Y.D. Loan Closers, LLC in 2002.   Mr. Binder testified that since founding T.Y.D. Loan Closers, LLC, he has closed approximately 8,000 loans, completing approximately five to seven closings a day.   As such, Mr. Binder has very limited memory concerning the particular closing involving Quicken and Ms. Downing.

Mr. Binder recalls that Ms. Downing was accompanied to the closing with another individual; a man he believed to be either her husband or boyfriend.   He believes he handled her transaction on March 17, 2007 no differently than the other 8,000 closings he has conducted since 2002.   According to Mr. Binder, at a closing he would ask the borrower for identification, which would typically be a driver's license.   After receiving the driver's license, he would compare the information on the driver's license to the borrower.   He would specifically compare height, weight, the photograph, as well as confirm the name on the driver's license.   Afterwards, Mr. Binder would set the driver's license aside and would begin to focus on the closing package which would contain a number of closing documents.[3]   Mr. Binder testified that he would observe the borrower while she signed and initialed each of the closing documents that were contained in the closing package.   However, it appears that Mr. Binder would only compare the signature found on the borrower's driver's license with the first document signed.   Finally, Mr.

---

[3] The documents contained within the closing package included the uniform residential loan application, the home equity line of credit, the occupancy verification, the home equity line agreement, the mortgage, the owner's lien affidavit, the signature/name affidavit, the HUD-1 settlement statement, and the loan proceeds delivery instructions.

Binder would copy information from the driver's license onto the Notary Identity Certification, before handing the license back to the borrower.  Mr. Binder testified he believes he followed his normal habits and the procedure listed during the March 17, 2007 closing.  Mr. Binder admits that he did not use a notary journal, ask for two forms of identification, or compare each signature on each document to the driver's license Ms. Downing presented to him.  He further testified that he had no reason to suspect, at the time of the closing, that the driver's license given to him by Ms. Downing was not her valid identification card.[4]

During the closing, Ms. Downing signed the name "Patricia J. Wilcher" as well as the initials "PW" on a number of closing documents.  Ms. Downing signed Ms. Wilcher's name to the following documents: the Uniform Residential Loan Application (Dkt. 56-5), the Home Equity Line of Credit (Dkt. 56-6), the Occupancy Verification (Dkt. 56-7), the Home Equity Line Agreement (Dkt. 56-8), the Mortgage (Dkt. 56-9), the Owner's Lien Affidavit (Dkt. 56-10), the Signature/Name Affidavit (Dkt. 56-11), the HUD-1 Settlement Statement (Dkt. 56-12), and the Loan Proceeds Delivery Instructions (Dkt. 56-13).   After Ms. Downing signed these documents using Ms. Wilcher's name, Mr. Binder signed the Notary Identity Certification form to acknowledge that Patrica J. Wilcher appeared before him and signed the loan documents as the borrower.  (Dkt. 73-19).   Ms. Wilcher testified that, contrary to the Notary Identity Certification, she never appeared or signed any documents to obtain a home equity loan.  At the end of the closing, Mr. Binder reviewed all of the documents within the closing package to make sure they were signed and initialed as required.  However, Mr. Binder admits that he failed to notice that on the Uniform Residential Loan Application, Ms. Downing initialed a page "SD" (her own initials) instead of "PW." *See* Dkt. 56-5 at 3.

---

[4] At his deposition, Mr. Binder testified that he now understood that the driver's license presented to him at the closing was Ms. Wilcher's ID, and not Ms. Downing's valid ID.

## C.    Disbursement of the Loan

Following the closing, a loan proceeds check for $83,566.00 was sent to Ms. Downing's home address pursuant to the Loan Proceeds Delivery Instructions filled out during the closing. The check was subsequently deposited into a bank account.  At some point after the money was deposited, Quicken sold the loan to Principal Bank.  Principal Bank became the holder of the loan and for the next two years, payments were made on the fraudulent loan. In 2009, Ms. Wilcher reported her sister's fraudulent transaction to the Indianapolis Metropolitan Police Department ("IMPD").  Thereafter, Principal Bank demanded Quicken repurchase the fraudulent loan.  On August 20, 2009, Quicken wired the amount of $89,968.35 to Principal Bank to repurchase the loan.

## D.    Ms. Downing's Criminal Investigation

In March 2009, IMPD detectives conducted a forgery investigation of Ms. Downing based on Ms. Wilcher's complaint.  Detective Dennis J. Grimmer ("Detective Grimmer") interviewed Ms. Wilcher, Mr. Binder and Ms. Downing.  In May 2009, Ms. Downing signed an Advice and Waiver of Rights form and made a statement.  In her statement, Ms. Downing admitted to Detective Grimmer that she signed Ms. Wilcher's name and used her social security number on Quicken's loan documents.  On May 13, 2009, Ms. Downing was charged in Marion Superior Court with two counts of forgery and two counts of identity deception.  Subsequently, Ms. Downing pled guilty to one count of identity deception under Indiana Code § 35-43-5-3, she spent two days in jail with 363 days suspended sentence, received one year of probation, and was ordered to pay $3,000.00 in restitution to Quicken.  On December 3, 2010, Quicken filed this present suit against the Defendants.[5]  Additional facts are added below as needed.

---

[5] State Farm Fire and Casualty Co. was also a named defendant in this suit, however, the party was dismissed from the suit after the parties filed a stipulation of dismissal.  (Dkt. 52.)

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.  <u>DISCUSSION</u>

Quicken argues that it is entitled to summary judgment on the issue of damages pursuant to Indiana Code § 34-24-3-1, against Ms. Downing resulting from the injuries it suffered due to her criminal actions as articulated under Indiana Code §§ 35-43-5-3.5, 35-43-5-2(a), 35-43-5-2(b).  Specifically, Quicken alleges that Ms. Downing acted intentionally and knowingly when she committed the crimes of identity deception, counterfeiting, and forgery in an attempt to

defraud Quicken of money in the form of a home equity loan by impersonating her sister.  Ms. Downing has failed to file a timely response to Quicken's motion for summary judgment.  In addition, Quicken argues that it is entitled to damages against Mr. Binder on summary judgment because he acted negligently by failing to properly verify Ms. Downing's identity and for breach of contract.  Mr. Binder counters Quicken's allegations by asserting that there is a question of fact regarding both of Quicken's negligence and breach of contract claims that precludes a granting of summary judgment in its favor.  The Court will address each motion in turn.

**A.      Quicken's Summary Judgment Motion Against Ms. Downing (Dkt. 55)**

First, Quicken argues that it is entitled to summary judgment on the issue of liability as Ms. Downing pled guilty to the criminal offense of identity deception and admitted facts establishing liability for forgery and counterfeiting.  Under the Indiana Crime Victim's Relief Act, a person who commits certain criminal offenses as designated by the statute may recover up to three times the actual damages, the costs of the action, and reasonable attorney's fees upon a showing that he suffered pecuniary harm.  *See* Ind. Code § 34-24-3-1.  Recovery pursuant to this statute in a civil action does not require a criminal conviction.  *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1114 (S.D. Ind. 2001) (citing *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind. Ct. App. 1995)).  In addition, unlike a criminal trial, the "claimant need only prove by a preponderance of the evidence that the criminal act was committed by the defendant."  *Gilliana v. Paniaquas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999).  However, "all elements of the alleged criminal act…must be proven by the claimant."  *Cook Biotech Inc. v. ACell, Inc.*, No. 4:03-cv-0046, 2005 WL 3828730, at *3 (N.D. Ind. June 22, 2005) (citing *Huff*, 654 N.E.2d at 835).  Finally, because the statute is punitive, the Indiana Crime Victim's Relief Act is to be strictly construed.  *Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 98

(Ind. Ct. App. 2009).   To satisfy the criminal offense claims regarding identity deception, counterfeiting, and forgery, Quicken must show that Ms. Downing committed the three criminal acts with the requisite intent.  *See Cook*, 2005 WL 3828730, at *3.

> Identity deception is committed when
>
> [a] person…knowingly or intentionally obtains, possesses, transfers, or uses the identifying information of another person…(1) without the person's consent; and (2) with the intent to: (A) harm or defraud another person; (B) assume another person's identity; or (C) profess to be another person; commits identity deception, a Class D felony.

Ind. Code § 35-43-5-3.5.   Counterfeiting is committed when

> [a] person who knowingly or intentionally: (1) makes or utters a written instrument in such a manner that it purports to have been made: (A) by another person; (B) at another time; (C) with different provisions; or (D) by authority of one who did not give authority; commits counterfeiting, a Class D felony.

Ind. Code § 35-43-5-2(a).   Finally, forgery is committed when

> [a] person who, with intent to defraud, makes utters, or possesses a written instrument in such a manner that it purports to have been made: (1) by another person; (2) at another time; (3) with different provisions; or (4) by authority of one who did not give authority; commits forgery, a Class C felony.

Ind. Code 35-43-5-2(b). The parties do not dispute or contest the fact that Quicken suffered pecuniary damages in the amount of $89,968.35 when it repurchased the loan from Principal Bank. Dkt. 55-28.  Thus, for Quicken to prevail on its motion against Ms. Downing on the issue of liability, it must prove by a preponderance of the evidence that all the elements of the criminal offenses were satisfied.

### 1.        Identity Deception

First, Quicken argues that Ms. Downing committed the offense of identity deception when she impersonated her sister, Ms. Wilcher, in order to obtain a home equity loan.  Quicken offers Ms. Downing's plea of guilty to the crime of identity deception in state court as evidence

that she committed the offense.  *See* Dkt. 55-30.  It is an undisputed fact that Ms. Downing

admitted to the crime of identity deception in her plea agreement.  At her plea and sentencing

hearing, she admitted to the court that she had "the intention do defraud Quicken Loans

knowingly obtain, possess, transfer or use identifying information, specifically an address and

social security number of Patricia Ms. Wilcher without her consent."  Dkt. 55-31 at 8:15-19.[6]

Based on these admissions, as well as the facts admitted by her failure to respond to Quicken's

request for admissions, Quicken has met its burden of establishing all elements of the criminal

offense of identity deception, including criminal intent, with respect to Ms. Downing.  Even

when viewing the evidence in the light most favorable to the non-moving party, Ms. Downing

has not established that a genuine issue of material fact exists regarding this issue that would

preclude the issuance of summary judgment.  Accordingly, the Court grants summary judgment

in favor of Quicken on the issue of liability with respect to identity deception under Count I.

### 2.       Counterfeiting and Forgery

Next, Quicken contends that Ms. Downing violated Indiana's counterfeiting and forgery

statutes in her attempt to defraud the company into giving her a home equity loan under her

sister's name.  As discussed previously, counterfeiting involves a person who "knowingly or

intentionally…makes or utters a written instrument in such a manner that it purports to have been

---

[6] While Ms. Downing did not file a response to Quicken's arguments regarding the issue of identity deception, she filed an answer to its complaint *pro se* claiming she "sign[ed] Patricia Wilcher's name, with Patricia Wilcher's knowledge and permission." Dkt. 24 at 1.  However, Ms. Downing's statement in her answer was inconsistent with her admission during her plea and sentencing hearing in which she admitted to intentionally defrauding Quicken using identifying information *without* Ms. Wilcher's consent.  *See* Dkt. 55-31.  Ms. Downing would likely be precluded from raising the position stated in her answer in this civil action under the doctrine of judicial estoppel when her position is inconsistent with her earlier position adopted by the Marion County Superior Court.  *See Ogden Martin Sys. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999) (applying judicial estoppel when "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position"). However, since Ms. Downing's answer in response to Quicken's complaint was filed late pursuant to the Federal Rules of Civil Procedure, the Court need not address this issue in further detail.

made…by another person…."  Ind. Code § 35-43-5-2(a).[7]  Forgery involves the same elements

as counterfeiting under the Indiana Code except it requires an "intent to defraud."  Ind. Code §

35-43-5-2(b).  To support its contention that each of the elements of these two criminal offenses

was committed by Ms. Downing, Quicken argues that Ms. Downing has admitted to these

offenses based on her failure to respond to requests for admissions.

Pursuant to Rule 36(a), "[w]here no response is made to requests for admissions, the

party making the requests is entitled to rely thereupon and no further proof is required to be

made of the facts thus admitted."  *Mangan v. Broderick & Bascom Rope Co.*, 351 F.2d 24, 28

(7th Cir. 1965).  Moreover, the fact that the party to which the rule is being applied to is *pro se*

shall not limit the application of the rule.  *See Lawson v. Diehl Machines, Inc.*, No. 3:98-CV-194,

1999 WL 325064, at *3 (N.D. Ill. Apr. 16, 1999) ("The strict dictates of the rule have been

applied even in instances…where default admissions are attached to a *pro se* party.") (emphasis

in the original).  Here, Ms. Downing did not respond to Quicken's assertion in its request that she

appeared before the notary, Mr. Binder. posing as her sister, Ms. Wilcher.  Dkt. 55-33 at ¶¶ 1-3.

Moreover, Ms. Downing did not respond to Quicken's request for admission that she signed Ms.

Wilcher's name and other identifying information to written documents in the closing package in

such a manner to make it appear as if they were executed by Ms. Wilcher.  Dkt. 55-33 at ¶ 4.

Further, Ms. Downing did not respond to Quicken's assertion that she "knowingly and

intentionally signed and presented the documents attached as Exhibits 20-28 to Quicken Loans

Inc. as if they had been made by Patricia Wilcher."  Dkt. 55-13, ¶ 11.  Accordingly, Ms.

Downing's failure to respond to Quicken's request binds her to these admissions, unless she

withdraws them, which she has not.  *See Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605,

---

[7] A "written instrument" for the purposes of this provision includes "a paper document, or other instrument containing written matter."  Ind. Code § 35-42-5-1(t).  Furthermore, to "make" a written instrument means to "complete" or "alter any written instrument in whole or in part."  Ind. Code § 35-42-5-1(m).

607-08 (7th Cir. 2008).  Based on these admissions, Quicken has established all but one of the elements connected with the criminal offenses of counterfeiting and forgery.  The remaining element Quicken must establish is the element of criminal intent.

Criminal intent is an essential element that must be proven with respect to a criminal offense when seeking treble damages under the Indiana Crime Victim's Relief Act.  *See* Ind. Code § 34-24-3-1; *see also Manzon*, 138 F. Supp. 2d at 1116 (noting that the burden to prove criminal intent is high with respect to the punitive statute, Indiana Code § 34-24-3-1, because it should be strictly construed) (citing *NationsCredit Commercial Corp. v. Grauel Enters., Inc.*, 703 N.E.2d 1072, 1078 (Ind. Ct. App. 1998)).  Indiana's counterfeiting statute includes two levels of criminal intent, "knowingly" or "intentionally," while Indiana's forgery statute requires an "intent to defraud."  Ind. Code § 35-43-5-2(a)-(b).  A person is culpable, in terms of criminal liability, for intentional conduct if, "when he engages in the conduct, it is his conscious objective to do so."  Indiana Code § 35-41-2-2(a).  On the other hand, "knowingly" is a decreased level of intent, and "[a] person engages in conduct 'knowingly' if…he is aware of a high probability that he is doing so."  Indiana Code § 35-41-2-2(b).

Quicken does not specifically address the issue of criminal intent with respect to counterfeiting and forgery, rather it relies on the deemed admissions of Ms. Downing as proof that she committed all the elements of the crimes.  In light of Quicken's position, the issue that arises is whether criminal intent with respect to the crimes of counterfeiting and forgery should be inferred as a matter of law.  *See White v. Ind. Realty Assocs. II*, 555 N.E.2d 454, 458 (Ind. 1990).  Recently in *Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190 (Ind. 2012), the Indiana Supreme Court articulated that "summary judgment is almost never appropriate where the claim requires a showing that the defendant acted with criminal intent or fraudulent intent."

*Id.* at 195.  Moreover, "finding criminal intent in the absence of a confession invariably requires weighing evidence, judging witness credibility, and drawing reasonable inferences from the facts, all of which are improper in considering a motion for summary judgment."  *Id.*

In this present case, Quicken designated evidence in the form of its requests for admissions that demonstrate that Ms. Downing had the requisite criminal intent to commit the crime of counterfeiting as well as forgery.  Due to her failure to respond, the Court deems the following facts admitted:

> Ms. Downing knowingly and intentionally signed and presented documents as Exhibits 20-28 to Quicken Loans Inc. as if they had been made by Patricia Ms. Wilcher.  Ms. Downing signed and presented the documents attached as Exhibits 20-28 to Quicken Loans Inc. with the intent to defraud.

Dkt. 55-33 at ¶¶ 4, 11.  Furthermore, Quicken provided evidence of Ms. Downing admitting to signing Quicken's loan documents under Ms. Wilcher's name.  *See* Dkt. 1-2 at 3; Dkt. 55-18 at 39.  In particular, Ms. Downing told Detective Grimmer during his investigation that she "signed her sister's name on the quicken loan documents."  Dkt. 1-2 at 3.  Additionally, Ms. Wilcher testified that at some period after Ms. Downing obtained the home equity loan from Quicken, Ms. Downing told her that she signed the documents given to Quicken to obtain the loan.  Dkt. 55-18 at 39:15-17.  This designated evidence submitted by Quicken along with Ms. Downing's admissions establishes that there is no genuine issue of material fact in dispute with respect to Ms. Downing's state of mind when she signed the closing documents under Ms. Wilcher's name.  *See Hampton v. State*, 961 N.E.2d 480, 487 (Ind. 2012) ("[T]he *mens rea* element for a criminal offense is almost, inevitably, *absent a defendant's confession or admission*, a matter of circumstantial proof.") (emphasis added).  As such, Ms. Downing's admissions by default warrant the entry of summary judgment in favor of Quicken with respect to its liability claims

regarding counterfeiting and forgery.  Accordingly, Quicken may recover treble damages, the cost of the action, and reasonable attorney's fees from Ms. Downing.

**B.**     **Quicken's Summary Judgment Motion Against Mr. Binder for Negligence (Dkt. 56)**

In its complaint, Quicken has alleged three counts against Mr. Binder—negligence (Count III), breach of contract (Count IV), and liability of notarial bond (Count V).  Quicken seeks a summary judgment ruling from the Court on the issue of Mr. Binder's liability to Quicken with respect to Counts III and IV, respectively.  Specifically, Quicken argues that as the notary and individual closing agent in the transaction, Mr. Binder's failure to verify Ms. Downing's identity and subsequently prevent the closing of the loan constituted negligence.  Additionally, Quicken alleges in Count IV that Mr. Binder is liable to it for breach of contract when Quicken was an intended third party beneficiary of the contact and sought to enforce the contract against Mr. Binder.   Mr. Binder responds by arguing that questions of fact exist regarding both negligence and breach of contract claims which precludes the issuance of summary judgment.  The Court will address these issues in turn.

**1.**     **Did Mr. Binder Owe a Duty to Quicken?**

Quicken claims that it is entitled to recover damages from Mr. Binder because Mr. Binder's verification of identity at the loan closing fell below the standard of care of a notary in Indiana, and as a proximate result, Quicken was harmed.  As such, Quicken sets forth a claim of negligence.  To establish a claim of negligence, a plaintiff must show that (1) the defendant owed the plaintiff a duty; (2) breach of the duty by allowing conduct to fall below the standard of care; and (3) the plaintiff suffered a compensable injury proximately caused by the defendant's breach of duty.  *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010).  In determining whether there is a duty, the Indiana Supreme Court has articulated three balancing

factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns."  *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).   Whether a defendant owes a duty to a plaintiff is a question of law.  *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992).   Absent a duty there can be no breach, and therefore, no recovery in negligence.  *Id.*   Thus, the Court will first address these balancing factors in order to determine if Mr. Binder owed Quicken a duty to accurately verify the identity of Ms. Downing.

### a.        Relationship Between the Parties

Mr. Binder argues that there can be no duty owed to Quicken when there was no privity between them.  *See id.* (stating that where there is no contractual or special relationship entered into between the parties, there is an absence of privity between them).   Relying on *Webb*, Quicken argues that in the absence of privity "Indiana courts have recognized that a professional may be liable to third parties…if those third parties rely on his conclusions or opinions and he had actual knowledge that those third persons would rely on his conclusions or opinions."  Dkt. 55 at 18.  The Court agrees.

In *Webb*, the Indiana Supreme Court found "a duty may be owed to a beneficiary of the consensual relationship…where the professional has actual knowledge that the services being provided are, in part, for the benefit of such third persons."  *Webb*, 575 N.E.2d at 996.  Here, Quicken was the third party beneficiary of the consensual relationship between Mr. Binder and JMT.  Mr. Binder clearly had actual knowledge that the reason he was hired was to be a witness notary at the closing for the benefit of Quicken. *See Walker v. Rinck*, 604 N.E.2d 591, 596 (Ind. 1992) (finding that the third party beneficiaries between a physician and his patient were the patient's future children).  First, Quicken relied upon Mr. Binder's professional experience as a

14

notary public to verify the identity of the borrower in a competent manner, in order to give it the proper assurance that it would be disbursing the loan to the correct person.  Quicken's reliance on Mr. Binder's services is evident in the fact that it subsequently funded the loan after the closing.  *See Vancura v. Katris*, 939 N.E.2d 328, 348 (Ill. 2010) ("Notary publics are routinely asked to witness instruments of great legal and financial significance, including loan documents, mortgages, and property transactions.  The potential for fraud in such transactions is great, and parties to the transactions rely on the proper performance of the notary.").  In addition, Mr. Binder effectively admitted at his deposition that he had actual knowledge that his services were provided for the benefit of Quicken.  Specifically, during Mr. Binder's deposition the following exchange took place:

> Q:   "[T]he work you did by notarizing and signing those documents directly benefited Quicken Loans?"
>
> A:   "Correct, the loan funds."

Dkt. 56-16 at 107:11-14.
….

> Q:   "I want to know if you notarize a signature of somebody that shouldn't have been notarized, you recognize a party who could be injured in that scenario is the lender; correct?"
>
> A:   "Correct. The lender-"

Dkt. 56-16 at 108:7-12.

In addition to Mr. Binder's statements acknowledging his knowledge regarding the benefit to Quicken, Quicken has presented testimony from its expert witness on the relationship of the parties.  *See Chambers v. Ingram*, 858 F.2d 351, 356 (7th Cir. 1988) ("An expert's testimony that a defendant's actions were negligent may be sufficient to establish the existence of a duty as well as the breach of that duty.").  Specifically, Quicken's expert witness, J.

Bushnell Nielsen ("Mr. Nielsen"), testified that "[i]t is common practice in the land title business to contract with an independent company or person to serve as a witness closer to meet with the borrower to witness the signing of the loan documents."   Dkt. 58-1 at 4, ¶ 8.   Based on these circumstances and the admissions made by Mr. Binder, the Court concludes that Mr. Binder, as the witness closer and a notary public, had actual knowledge that Quicken would rely on the rendering of his services before disbursing its funds to the borrower.   As such, the Court finds that there is a sufficient basis to establish the existence of a relationship between Mr. Binder and Quicken, which is required to impose a duty on Mr. Binder.

**b.      Foreseeability**

Pursuant to the analysis of the Indiana Supreme Court in *Webb*, harm is foreseeable if "the person actually harmed was a foreseeable victim and…the type of harm actually inflicted was reasonably foreseeable."   *Webb*, 575 N.E.2d at 97.   Moreover, "[t]he duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by breach of the duty."   *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 574 (Ind. App. Ct. 1986).   Quicken argues that common sense dictates that a loan closer's negligence could foreseeably harm a mortgage lender whose money is being disbursed to another in the transaction.   Dkt.  73 at 2-3.   On the other hand, Mr. Binder argues that any injury to Quicken could not be foreseen based on his acknowledgement of the signature of Ms. Downing.   However, Mr. Binder does not sufficiently explain how it would be unforeseen and as such, his arguments on this issue are waived.   *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000) (stating that "perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").   Here, the Court concludes

16

that any injuries suffered by Quicken, as the financial institution involved in the transaction, would be foreseeable.

c.      **Public Policy**

Finally, under the *Webb* factors, a court must consider the public policy considerations in determining whether a plaintiff is owed a duty by the defendant.  *See Webb*, 575 F.3d at 997.  As mentioned earlier, a notary public holds an important role in society by preventing fraud and forgery in certain transactions, such as ones involving mortgages and loan documents that have financial significance.  *Vancura*, 939 N.E.2d at 348.

> The notary serves the critical purpose of preventing fraud and forgery on a large scale.  Acting as an unbiased witness to the identity of a person who comes before him or her, the notary's seal indicates authenticity and imbues trust in the document presented.  For these reasons, the notary holds a great deal of responsibility to the citizens and is therefore held to a certain standard of care.

Michael J. Otsy, *Notary Bonds and Insurance: Increasing the Protection for Consumers and Notaries*, 31 J. MARSHALL L. REV. 839, 846 (1997-1998).  Additionally, Quicken's expert, Mr. Nielsen, testified that "[t]he notary's acknowledgment is the bulwark of modern American real estate conveyancing law as to proof of the genuineness of the signatures that appear on recorded conveyance instruments, including mortgages."  Dkt. 58-1 at 6, ¶ 16.  Mr. Binder responds by arguing that Quicken's suit against him is contrary to public policy because it allows entities, in which it has a direct relationship, to escape liability.  Dkt. 68 at 10.  Mr. Binder's argument is misplaced in this case because Mr. Binder was the only professional representative who was present at the closing.  By performing his job diligently, he alone had the ability to prevent Ms. Downing from completing her fraudulent plan.  Public policy supports imposing a duty on notaries, such as Mr. Binder, to perform their job duties competently in order to prevent potential fraud from occurring which might injure the financial institution.  To hold some other entity

liable for the errors created by a notary would cut against this important public policy of preventing fraud from occurring in financial transactions. Accordingly, public policy considerations weigh in favor of Quicken. After reviewing the three factors, the Court finds that Mr. Binder owed a duty to Quicken as the witness closer and notary public, to use reasonable care in verifying the identity of the person at the closing as the borrower of the loan.

### 2.    Did Mr. Binder Breach that Duty?

Having found that Mr. Binder owed a duty to Quicken, the Court must next determine whether Mr. Binder failed to conform his conduct to the required standard of care for notary publics, i.e., whether he breached his duty to Quicken. "Whether a particular act or omission is a breach of a duty is generally a question of fact." *Stephenson*, 596 N.E.2d at 1373. The issue regarding a breach of duty "can be a question of law, however, when the facts are undisputed and only a single inference can be drawn from the facts." *Id.* Quicken argues that the standard of care is one of objective reasonable care, where a notary is obligated to act as any other reasonably prudent notary in a similar circumstance. *See* Otsy, *supra* at 846 ("The standard of care for notaries, no matter in what state, is one of objective reasonable care. This means that the notary must act as any other reasonably prudent notary would act in similar circumstances.").

Specifically, Quicken has presented evidence regarding the standard of care through affidavit of its expert witness, Mr. Nielsen. According to Mr. Nielsen, the standard of care involves the following reasonable measures to be taken by a notary in verifying the identity of a person at a closing: (1) requiring the purported borrower to produce two forms of identification; (2) comparing the information and photograph of the ID(s) to the person present at the closing; and (3) comparing the signature on the ID(s) to each of the signatures signed at the closing. Dkt. 58-1,2 ¶¶ 20, 24, 28. As the Indiana Supreme Court noted in *Harris v. Raymond*, 715 N.E.2d

388 (Ind. 1999), a plaintiff may need to present expert testimony to the trier of fact to determine what other reasonable individuals who are similarly situated would have done under the circumstances. *Harris*, 715 N.E.2d at 1999. However, when no reasonable jury could reach any conclusion other than that a specific standard of care applied, and it was breached by the defendant, the issue of breach becomes a question of law. For example, in medical malpractice cases, the need for expert testimony may not be required when the deviation from the standard of care can be understood by lay persons. *See Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992) (stating the expert testimony is needed "except in those cases were deviation from the standard of care is a matter commonly known by lay persons").

Mr. Binder asserts that a determination of whether he breached his duty is an appropriate issue for the jury, not the Court. In addition, Mr. Binder argues that the standard of care indicated by Quicken's expert involving the best practices for notaries is not conclusive and is inconsistent with the Indiana statute regarding notaries. *See* Ind. Code § 33-42-2-1, *et. seq*. The Court disagrees. Pursuant to Indiana Code § 33-42-2-5, it states the following:

> A notary may: (1) do all acts that by common law, and the custom of merchants, notaries are authorized to do; (2) take and certify all acknowledgments of deeds or other instruments of writing required or authorized by law to be acknowledged; and (3) administer oaths generally, and take and certify affidavits and depositions.

Ind. Code § 33-42-2-5. This provision regarding the powers of a notary establishes that they may perform acts that are within the custom of merchants. With respect to the customs regarding notaries, the Indiana Secretary of State and the National Notary Association have set forth certain practices a notary should follow when notarizing a signature. The Indiana Secretary States provides the following:

> With respect to the procedures addressing how a notary identifies a signer, identification. Proper "ID" should include a photograph and signature on a reliable identification card such as a driver's license. It also is considered

19

> sufficient identification if, under oath a credible witness personally known by the notary identifies the person.

Dkt. 56-14 at 4.

The Notary Association of America provides the following:

> When verifying the identity of a singer, the Notary's most reliable identification documents are issued by the state or federal government and contain a photograph, a physical description and the bearer's signature.  These elements provide a basis for comparison with the actual physical appearance and signature of the signer presenting the document for notarization.

Dkt. 56-13.

A notary identifies a signer by carefully examining the identification presented by that person and comparing the signatures the person has made on the document with the signature on the

In response, Mr. Binder claims he has met his duty as a notary by following the best notary practices in rendering his services.  Specifically, Mr. Binder asserts that he checked the information on the driver's license provided to him by Ms. Downing with the signatures on the loaning documents.  Dkt. 68 at 15-16.  Further, Mr. Binder claims that he reviewed every signature from document to document.  Dkt. 68 at 16.  The Court disagrees.

Mr. Binder has not presented his own expert witness testimony to contradict Mr. Nielsen's affidavit and establish that his performance satisfied the standard of care to create a genuine issue of fact for trial.  *See Lincke v. Long Beach Cnty. Club*, 702 N.E.2d 738, 740 (Ind. Ct. App. 1998).  Even without expert witness testimony from Mr. Binder, the undisputed facts indicate that Mr. Binder, in addition to his failure to recognize variances in the signatures and differences in the driver's license photograph and data, he failed to detect that Ms. Downing initialed a page of the final loan application with "SD" (her own initials) instead of "PW" for her sister's initials.  *See* Dkt. 56-5 at 2.  Mr. Binder admits that when reviewing Ms. Downing's signatures and initials on the loan application he "missed it."  Dkt. 56-16 at 154:25-155:12.  As

such, the undisputed facts establish that Mr. Binder did not accurately check every signature and initial from document to document as he has claimed.  If Mr. Binder had noticed Ms. Downing's mistake in using her own initials, he would have stopped the closing to perform an investigation into her identity.  However, this did not occur and Mr. Binder signed the Notary Identity Certification acknowledging that signatures on the loan documents were from Ms. Wilcher.  Mr. Binder committed a substantial error as a notary and, thus, the only reasonable inference that could be drawn from this error is that Mr. Binder breached his duty to Quicken.  *See Stephenson*, 596 N.E.2d at 1372-73.  Given the lack of evidence designated by Mr. Binder to establish a genuine issue of fact exists regarding this issue, the Court concludes that Mr. Binder breached his duty to Quicken as a matter of law.

### 3.    Was Mr. Binder's breach of duty a proximate cause of Quicken's damages?

Finally, with respect to its negligence claim, Quicken must establish that Mr. Binder's breach of duty was a proximate cause of its damages.  "To determine whether an act is a proximate cause of another's injury under the traditional standard of causation, we consider whether the injury was a natural and probable consequence of the negligence act, which, in light of the attending circumstances, could have been reasonably foreseen or anticipated."  *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010).  In addition, "the defendant's act need not be the sole cause of the plaintiff's injures; it needs to be only one of the proximate causes rather than a remote cause."  *Hamilton v. Ashton*, 846 N.E.2d 309, 316 (Ind. Ct. App. 2006).   While proximate cause is generally considered a question of fact, it becomes a question of law where only a single conclusion can be drawn from the designated facts.  *Id.*

Here, the designated facts establish that Mr. Binder's performance at the closing as the closing agent and notary allowed Ms. Downing to complete the fraudulent transaction.  Because Ms. Downing's identity was not properly investigated at the closing by Mr. Binder, Quicken

disbursed the home equity loan to her after relying on the conclusions of Mr. Binder based on his service.  Subsequently, Quicken sold the loan to Principal Bank, and it had to repurchase the loan at the price of $89,968.35 after Ms. Downing's fraudulent scheme was discovered.  As such, Quicken suffered $89,968.35 in damages.  Because Ms. Downing has been ordered to pay $3,000.00 to Quicken in restitution, Quicken's damages are at $89,968.35.  Mr. Binder has not presented evidence to establish that there is a genuine issue of fact regarding the issue of proximate cause.  Importantly, the only conclusion that can be drawn from the designated evidence is that Mr. Binder's breach of duty as an individual closing agent and notary was a proximate cause of Quicken's damages.  Accordingly, the Court finds that Mr. Binder is liable to Quicken for negligence and, therefore, Quicken is entitled to summary judgment on this issue of negligence.  With respect to allocation of fault on the negligence claim, the parties agree that the issue of allocation of damages, in the comparative-fault sense, is a task to be performed by the jury.

## C.    Quicken's Summary Judgment Motion Against Mr. Binder for Breach of Contract

Quicken also claims that Mr. Binder is liable to it for a breach of contract in its complaint as a third party beneficiary.

> To enforce a contract as a third party beneficiary, the third party beneficiary must show the following: (1) [a] clear intent by the actual parties to the contract to benefit the third party; (2) [a] duty imposed on one of the contracting parties in favor of the third party; and (3) performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Eckman v. Green*, 869 N.E.2d 493, 496 (Ind. Ct. App. 2007).  "The intent to benefit the third party is the controlling factor and may be shown by specifically naming the third party or by other evidence."  *Id.* (quoting *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001).  Mr. Binder responds to Quicken's claim by arguing that Quicken is not a third party beneficiary

when there was no clear intent by the parties to benefit it and there is a question of fact regarding the duty imposed on Mr. Binder as well as breach of that duty.

As an initial matter, Mr. Binder argues that a question of fact exists as to whether JMT and Mr. Binder clearly intended their contract to benefit Quicken.  On this issue, Mr. Binder asserts that Quicken has designated no evidence regarding the element of intent.  The Court agrees.  While Quicken refers to Exhibit 18, a document purported to be JMT's instructions to Mr. Binder referencing Quicken's lender requirements, Quicken has not designated this document into evidence.  The Seventh Circuit observed that the Court need not "scour the record" to make a lawyer's case or piece together appropriate arguments.  *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).  However, even upon a search of the record, the Court has been unable to locate the document purported to be Exhibit 18.  *See Loparex, LLC v. MPI Release Techs., LLC*, 2011 WL 1135906, at *3 n.2 (S.D. Ind. Mar. 25, 2011) (citing Fed.R.Civ.P. 56(c)(3)) (stating that the court will only consider evidence that the parties designated in connection with the motion for summary judgment).  Thus, the Court will not consider Quicken's references to Exhibit 18 with respect to its breach of contract claim.  Because Quicken has not designated sufficient evidence to establish the intent of JMT and Mr. Binder as to its contract, which is a controlling factor of the analysis, the Court concludes it is not entitled to summary judgment on this issue.  Therefore, the breach of contract claim against Mr. Binder will be determined by the  jury.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Quicken's Motion for Summary Judgment as to Liability of Defendant Sharon Downing (Dkt. 55) is **GRANTED** and Quicken's Motion for Summary as to Liability of Michael S. Binder (Dkt. 56) is **GRANTED** with respect to the negligence claim, but **DENIED** with respect to the breach of contract claim.

SO ORDERED.

Date:  10/05/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel D. Bobilya
BOBILYA & REIDY LLP
dbobilya@b-rlegal.com

Lisa Marie Dunkin
BOBILYA & REIDY LLP
ldunkin@b-rlegal.com

Joseph M. West
LAW OFFICE OF JOSEPH M. WEST, PC
jmwest@josephmwest.com

Sharon Downing
7625 Ground Drive
Indianapolis, Indiana  46259